# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TERESA K. HONAKER,**
      **Plaintiff,**

                                **Civil Action 2:16-cv-230**
      **v.**                        **Judge James L. Graham**
                                  **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECCOMENDATION

Plaintiff, Teresa Honaker, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB").  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record.  (ECF No. 8.)  For the reasons that follow, the Undersigned **RECCOMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff, who was fifty-three years old at the relevant time period, filed her application for benefits on September 18, 2012, alleging she has been disabled since June 29, 2012, due to bipolar disorder, post-traumatic stress disorder, panic attacks, sleep problems, depression, paranoia, loss of focus, and temper.  (R. at 149, 165.)  Plaintiff's applications were denied

initially on January 22, 2013 and upon reconsideration on April 19, 2013. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Ryan Glaze ("ALJ") held a hearing on May 30, 2014, at which Plaintiff, represented by counsel, appeared and testified. Millie Droste, a vocational expert, also appeared and testified at the hearing. On August 27, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On January 14, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises two issues. (Plaintiff's Statement of Errors ("SOE") at 1, ECF No. 12.) Plaintiff first asserts that the ALJ's treatment of various psychological opinions failed to follow regulatory guidelines and is not supported by substantial evidence; and second, the ALJ failed to assess Plaintiff's credibility as required by the regulations. (*Id.*)

In her Memorandum in Opposition, the Commissioner counters that the substantial evidence supports the weight the ALJ gave to the medical opinions of record and substantial evidence supports the ALJ's credibility assessment of Plaintiff's subjective complaints. (Defendant's Memorandum in Opposition ("Opp.") at 1, ECF No. 18.)

## II.     HEARING TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff testified that she lives with her husband, twenty-one year old daughter, and twenty-one year old son. (R. at 47.) Her husband is a full time delivery truck driver. (*Id.*) Plaintiff last worked In October 2012. She testified that she worked at Chemical Abstract Service in the finance department, the accounts payable section for twenty-six years but that her

position was "eliminated" while she was out of work recovering from shoulder surgery.  (R. at 49.)  She said she had been off on FMLA leave for approximately 120 days in 2012, before her job was eliminated.  She testified that she took leave because she was uncomfortable with the manager and coworkers, because of making mistakes at work, and worrying about work.  (R. at 51.)

She testified that she suffers from anxiety and social phobia and that she had experienced a panic attack while at work.  She also testified that although it has been two years since she was fired from Chemical Abstract Service, she still has nightmares about work.  (R. at 51.)  She has never been hospitalized for her anxiety.  (R. at 50.)  She reported that since taking a new medication her symptoms are not as severe.  (R. at 52.)

She further testified that she socializes with her mother, daughter, and a friend in Michigan.  She reported that she is able to drive a car, shop in stores, that she does her own laundry, prepares crockpot meals, cooks baked potatoes, unloads the dishwasher, performs household chores with help from her husband, and manages her own personal hygiene with reminders from her husband to bathe regularly.  (R. at 55, 57, 59.)  Plaintiff also testified that she uses a computer for research and email, goes to see movies in the theater, uses the ATM, and goes out to eat with her family.  (R. at 59.)  She also sorts the mail and collects coupons.  (R. at 59.)

## B.    Vocational Expert's Testimony

Vocational Expert Millie Droste, Ph. D. ("VE"), testified at the administrative hearing that Plaintiff's past relevant employment was as an account payable bookkeeper, classified as a sedentary exertional job.  (R. at 62.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 62–63.) Based on Plaintiff's age, education, work experience, and the RFC ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work. The VE testified that Plaintiff could perform three other jobs including: medium cleaner, with 80,000 jobs in the local economy and 2,000,000 jobs in the national economy; laundry worker, with 2,000 jobs in the local economy and 68,000 jobs in the national economy; and laborer, stores, with 21,000 jobs in the local economy and 300,000 jobs in the national economy. (R. at 63.)

### III.     MEDICAL RECORDS

#### A.     Dr. Youngman

Dr. James Youngman, Plaintiff's treating psychiatrist, performed an initial evaluation in June 2010. At the initial evaluation, Plaintiff reported a history of panic attacks and mood swings. She stated that she sometimes had difficulties at work. She stated that she had a panic attack the previous week and had to take two hours out of the office to compose herself. (R. at 280.) She said that she had mania that sometimes lasted a month and depression which lasted for several months. (*Id.*) When manic, she spent money, did not sleep, and started many projects. She denied compulsions or agoraphobia. (*Id.*) Dr. Youngman observed that Plaintiff was oriented with an intact memory and average general fund of knowledge. (R. at 281.) He also found her insight and judgment were fair to moderate. (*Id.*) He diagnosed her with bipolar II disorder and prescribed Topamax and Trazodone. (R. at 282.)

In an October 31, 2012 disability form completed by Dr. Youngman and submitted to Social Security in November 2012, he indicated that Plaintiff was diagnosed with bipolar II disorder, with labial moods, suspiciousness, racing thoughts, poor concentration, hopelessness,

decreased energy level, impulsivity, and poor judgment. (R. at 283.) He concluded that Plaintiff's ability to tolerate the stress of routine daily activity as well as work-place stress was very limited. (R. at 284.)

In March 2013, Dr. Youngman completed a second assessment form where he indicated that clinical examination revealed depressed mood, social withdrawal, decreased energy level, poor concentration, anhedonia, appetite changes, and hopelessness. (R. at 302.) He also indicated that Plaintiff had poor concentration and low self-esteem. (R. at 303.)

Plaintiff received treatment from Dr. Youngman from March 2013 through January 15, 2015. (R. at 335–38.) Dr. Youngman's treatment notes reflect Plaintiff's complaints of mood swings, concentration problems, and other symptoms of her mood disorder as well as her denial of any suicidal ideations. (*Id.*)

**B.      Dr. Hammerly**

On January 7, 2013, Plaintiff underwent a consultative examination with psychologist Mark Hammerly, Ph. D. (R. at 290–98.) Dr. Hammerly noted that Plaintiff drove herself to the appointment and that she exhibited normal concentration, attention, persistence, and pace during the exam. (R. at 290, 297–98.) At the appointment Plaintiff denied having problems with authority figures and reported that she had no problems getting along with people at her prior job. (R. at 292.) Plaintiff did, however, report problems with work speed, quality or understanding toward the end of her tenure due to bipolar concentration issues. (*Id.*) She reported that she shares most household duties with her husband, including dishes, laundry, cooking, housecleaning, and grocery shopping. (R. at 293.)

During her exam, Plaintiff was generally cooperative with Dr. Hammerly and made moderate eye contact throughout the appointment. (R. at 293.) He noted that Plaintiff's mood

was demoralized at times, that she exhibited mild psychomotor agitation, and that she did not display automatic signs of anxiety.  (R. at 394.)  He noted that Plaintiff "showed signs of fidgeting, but there were no signs of jittering, shaking, rocking, trembling, or other motor-manifestations of anxiety during the interview.  She did not sweat, hyperventilate, or otherwise display autonomic signs of anxiety.  There was no hypervigilance and no outright fear displayed by the claimant."  (R. at 294.)  He further observed that Plaintiff's thought processes were coherent, goal-directed, and logical.  (R. at 293.)  Moreover, Dr. Hammerly found that Plaintiff exhibited "some signs of social phobia" but no hallucination, paranoia, delusions, panic attacks, or agoraphobia.  (R. at 294.)

He diagnosed Plaintiff with bipolar disorder and social phobia.  (R. at 295.)  He also determined that Plaintiffs "has sufficient information, judgment, and common sense reasoning ability to live independently and to make important decisions concerning her future."  (*Id.*)  Dr. Hammerly further opined that Plaintiff would have difficulty sustaining employment dealing with the public; would have some significant trouble relating to supervisors and coworkers; and would be expected to respond in a less than appropriate manner to ordinary workplace pressures.  (R. at 297–98.)

## C.      State Agency Psychologists

On January 17, 2013, State agency reviewer Melanie Bergsten, Ph. D., reviewed Plaintiff's record and determined that her statements were generally consistent with the totality of the evidence.  (R. at 74.)  Dr. Bergsten gave great weight to the 2012 conclusions of Dr. Youngman and the January 2013 opinions of Dr. Hammerly.  (R. at 75.)  Among other findings, Dr. Bergsten concluded that Plaintiff experienced significant limitations in the area of social interactions, and that she would be able to "relate to a few familiar others on a superficial basis."

Moreover, she also concluded that Plaintiff suffered from limitations in the area of adaptation but that she would be able to perform work related tasks in situations where the duties are relatively static and changes can be explained.  (R. at 78.)

On April 5, 2013, in connection with Plaintiff's request for reconsideration, a second State agency reviewer, Dr. Deryck Richardson, Ph. D., considered the contents of Plaintiff's medical file.  (R. at 88.)  Dr. Richardson similarly found Plaintiff's statements generally consistent with the totality of the evidence.  (*Id.*)  Dr. Richardson noted that Plaintiff "exhibits suspiciousness and depression and is noted to be asocial outside of family interactions.  Claimant is able to related to a few familiar others on a superficial and infrequent basis.  Contacts with the general public are precluded."  (R. at 92.)  Identical to Dr. Bergsten, Dr. Richardson further concluded that Plaintiff is able to perform work related tasks in situations where duties are relatively static and changes can be explained.  (*Id.*)

## IV.    ADMINISTRATIVE DECISION

On August 27, 2014, the ALJ issued his decision.  (R. at 22–36.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

gainful activity since June 29, 2012, the alleged onset date of disability.  (R. at 24.)  The ALJ

found that Plaintiff had the severe impairments of obesity, bipolar disorder, and social phobia.

(*Id.*)  He further found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P. Appendix 1.  (R. at 25.)

> At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) except that she can occasionally stoop, crouch, and climb
> ladders, ropes, and scaffolds.  She is able to work in a low stress environment,
> defined as an environment without high production quotas such as piecework or
> assembly line work, and with no strict time requirements, arbitration, negotiation
> confrontation, directing the work of, or being responsible for safety of others.  She
> can perform work that involves no more than occasional interaction with
> supervisors, coworkers, and the general public on trivial matters, defined as
> dispensing and sharing factual information that is not likely to generate an
> adversarial setting.

(R. at 28.)  In reaching this determination, the ALJ gave Dr. Hammerly's opinion "significant

weight" while giving Dr. Youngman's opinion "partial weight."  The ALJ reasoned that Dr.

Youngman's opinion only merited partial weight even though he was Plaintiff's treating

physician:

> Dr. Youngman appears to be a treating source within the meaning of 20 CFR §
> 416.927.  The opinion of a treating source is entitled to controlling weight where
> it is well supported by and not inconsistent with objective clinical and laboratory
> findings (Social security Ruling 96-2p).  However, this assessment is not entitled
> to that degree of probative consideration for multiple reasons.  First, the doctor
> does not provide sufficient clinical and laboratory data to support his conclusion.
> He does not provide a detailed function-by-function analysis that demonstrates the
> inability to perform any type of gainful activity.  His opinion appears to be limited
> to the claimant's subjective report of her symptoms rather than to his own

---

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

observations and objective data.  This report is given partial weight, although his opinion that the claimant has reduced stress tolerance has been accommodated in the above described residual functional capacity.

(R. at 31.)

The ALJ noted that at the hearing, Plaintiff's "speech was clear, her tone normal, and her thought processes appeared to be coherent, goal directed, and logical."  (R. at 32.)  The ALJ found that Plaintiff showed signs of mild psychomotor agitation in the form of fidgeting but that there "were no other manifestations of anxiety."  (*Id.*)  In fact, the ALJ points out that Plaintiff "denied panic attacks or agoraphobia, but did report symptoms of social phobia."  (*Id.*)

The ALJ gave Dr. Hammerly's opinion significant weight.  Dr. Hammerly provided diagnoses of bipolar disorder and social phobia.  (R. at 32.)  While giving Dr. Hammerly's opinion significant weight, he never-the-less found, "in  considering the record as whole the undersigned finds that the claimant would be able to perform low stress work requiring only occasional contact with others on trivial matters . . . [a]lthough his opinion is the result of his own observations, psychometric testing, a clinical interview, and a mental status evaluation it is only based on one time examination and relief primarily on claimant's subjective complaints which I have found to be only generally credible . . . ."  (*Id.*)

The ALJ noted that the limitations he assessed "generally adopt the opinions of the State of Ohio Bureau of Disability Determination ("BDD") physicians and psychologists", whose opinions he gave significant weight.  He reasoned that those opinions were "based on objective signs and findings, consistent with the credible portion of activities and daily living evidence, and not contradicted by any treating source shown to be familiar with SSA and occupational standards.  They are consistent with and well supported by the evidence of the record as a whole."  (*Id.*)  The ALJ, however, did not accept all limitations suggested by the BDD physicians

and psychologists. For example, the ALJ determined that the limitation precluding Plaintiff from interacting with the general public, identified by the BDD psychologists, was not supported by the record. "In addition, the psychological experts identified a limitation precluding the claimant from interacting with the general public, which is not supported by the claimant's sparse psychiatric evidence, her ability to shop in stores, her presentation at medical and psychiatric appointments, and her reported ability to eat at restaurants with her family." Moreover, the ALJ noted that there was no evidence that Plaintiff had ever been treated for or diagnosed with posttraumatic stress disorder, nor is there evidence of panic attacks of the frequency and severity to which the Plaintiff testified. The ALJ left the record open for two weeks after Plaintiff's hearing in order to allow her to obtain and submit more recent psychiatric records. He noted in his decision that no additional records were submitted. (R. at 33–34.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

In her Statement of Errors, Plaintiff argues that the ALJ's treatment of various psychological opinions fails to follow regulatory guidelines and is not supported by substantial evidence; and she also maintains that the ALJ failed to assess Plaintiff's credibility as required by the regulations. (*see* SOE.)

### A.    ALJ's Treatment of Psychological Opinions is Supported by Substantial Evidence

In her first assignment of error, Plaintiff argues that the ALJ impermissibly evaluated and weighed the opinions of Dr. Youngman and Dr. Hammerly, as well as those offered by the BDD Psychiatrists.

An ALJ is required to "evaluate every medical opinion" against a variety of factors, including the nature of the treatment relationship, the supporting medical basis for the opinion, and the overall consistency with the record as a whole.  20 C.F.R. §§ 404.1527(d) and 416.927; *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 438-39 (6th Cir. 2012).  An opinion from a treating source is "'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician."  *Id.* (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)).  Non-treating sources who physically examine a claimant but who do not have or did not have an ongoing treatment relationship with the claimant fall next along the continuum in terms of weight.  *Id.* (citing *Smith*, 482 F.3d at 875).  Finally, a non-examining source who provides an opinion "based solely on the review of the patient's existing medical records [] is afforded the least deference."  *Id.*  (citing *Smith*, 482 F.3d at 875); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination.").

To qualify as a treating source, a physician must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Even if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must still meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimaint's] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend*, 375 F. App'x at 551 (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1. Dr. Youngman's Opinion

Applied here, the Undersigned finds that the ALJ did not err in his consideration and weighing of the medical sources' opinions. To begin, the ALJ recognized Dr. Youngman as Plaintiff's treating psychiatrist, but assigned his opinions "partial weight" based on inconsistencies in the record and Dr. Youngman's own treatment notes, as well as a lack of objective medical evidence to support his opinion. (R. at 31.)

The Undersigned finds that the ALJ's determination to assign only partial weight to Dr. Youngman's opinion is supported by substantial evidence. For instance, as the ALJ recognized, there are inconsistencies between the opinion and his treatment records. Dr. Youngman identified extreme limitations in his April 2014 questionnaire, stating that he considered Plaintiff to be permanently disabled, but that she could manage benefits for her own interest. *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) (finding that when the combination of treating sources' own notes, findings by a neurologist, and other examining physicians contradict those of the treating source, the treating source opinion is inconsistent with substantial evidence in the case record and not entitled to controlling weight). Further, Dr. Youngman's report of Plaintiff's medication revealed no changes from the previous year, which was inconsistent with his report of significantly worsened symptoms. These inconsistencies provide good reasons to allocate less than controlling weight to the treating physician's opinion. *See Gault v. Comm'r of Soc. Sec.*, 535 F. App'x 495, 496 (6th Cir. 2013) (holding that the ALJ properly evaluated the physician's opinion where the degree of the opined limitations was inconsistent with the claimant's benign clinical examinations, conservative course of treatment, and daily activities).

## 2. Dr. Hammerly

Plaintiff also contends that the ALJ improperly weighed Dr. Hammerly's opinions reasoning that "the ALJ's apparent rejection of those work-preclusive portions of Dr. Hammerly's opinion was the result of his own observations, psychometric testing, a clinical interview, and a mental status evaluation. (Pl.'s Statement of Errors at 11.)

The ALJ gave Dr. Hammerly's opinion significant weight, but did not accept all of the limitations Dr. Hammerly suggested, including his opinion that Plaintiff would have significantly decreased success in withstanding the daily stress of work and relating to coworkers and supervisors. (R. at 32.) The determination is supported by substantial evidence. Consistency with the record is a relevant factor in evaluating a medical opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Such limitations are inconsistent with Plaintiff's statements to Dr. Hammerly, including her reports that she had no problems getting along with others at her last job and denied problems with authority figures. (R. at 32, 292.) The ALJ properly factored in Dr. Hammerly's treating relationship with Plaintiff, including the fact that Dr. Hammerly only examined Plaintiff one time, was not a treating physician, and in large part relied on Plaintiff's subjective statements. (R. at 32.) *Wilson*, 378 F.3d at 544 (in determining what weight to give a treating source opinion, the ALJ must weigh certain factors including the length of the treating relationship and frequency of examination).

Plaintiff cites *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 526 (6th Cir. 2014), to support her contention that the ALJ improperly rejected Dr. Hammerly's opinions because he purportedly relied on her subjective complaints. (Pl.'s Statement of Errors at 11–12.) *Keeton* however, is clearly distinguishable here. In *Keeton*, the court reasoned that the ALJ could not

reject the doctor's reliance on the claimant's subjective claims where the claims where not observable by the doctor. *Id.* ("it would be impossible for a doctor to observe the contents of Plaintiff's dreams, the intensity of his hallucinations, or his flashbacks to the Vietnam War.") Here, however, the same reasoning does not apply as Dr. Hammerly specifically observed that Plaintiff's mental control, concentration, and memory are "grossly intact." (R. at 294.) He further personally observed that while Plaintiff showed signs of social phobia, examination did not reveal evidence of panic attacks or agoraphobia. (R. at 297.)

### 3. State Agency Physicians

Finally, the Undersigned similarly finds that the ALJ adequately weighed the State agency non-examining psychologists' opinions. Plaintiff contends that the ALJ mischaracterized the evidence when he "generally adopted the opinions of state agency psychologist, but rejected the opinion of Dr. Richardson that plaintiff was precluded from interacting with the general public. . ." (SOE at 15.) The Undersigned finds that substantial evidence supports the weight the ALJ gave to these opinions. The ALJ correctly determined that the evidence, including Plaintiff's ability to shop in stores, her presentation at appointments, her ability to eat at restaurants, and attend movies does not support the preclusion of contact with the general public. The inconsistency between precluding Plaintiff from interacting with the general public and her daily activities provide sufficient reason for the ALJ's decision. *See Hensley v. Comm'r Soc. Sec.*, Case No. 1:15-cv-11, 2017 WL 1055152, at *5 (S.D. Ohio March 21, 2017) (finding the ALJ properly evaluated plaintiff's daily activities in determining the weight to afford a medical source's opinions).

Plaintiff similarly contends that the ALJ also erred because "both state agency psychological reviewers indicated that plaintiff was limited to work that was relatively static and

where changes could be explained," and the ALJ did not include those limitations in the RFC. (SOE at 16.) Contrary to Plaintiff's contentions, the ALJ did generally account for those limitations in the assessed RFC. The ALJ limited Plaintiff to a low stress work environment with no need for skills involved in managing shifting circumstances, such as arbitration, negotiations, confrontation, and directing others. (R. at 28.) These are the limitations he found credible and adopted into the RFC.

Because the Undersigned finds that the ALJ properly weighed all medical source evidence and thus the RFC is supported by substantial evidence, it is **RECCOMENDED** that Plaintiff's first contention of error be **OVERRULED**.

## 4. Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Subjective Complaints

In her second assignment of error, Plaintiff argues that the ALJ failed to asses her credibility as required by the regulations.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be

"based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996)[2]; *but see Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In evaluating Plaintiff's credibility with respect to his subjective claims, the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's

---

[2] SSR 16-3p, which became effective March 28, 2016, superceded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1. Because SSR 16-3p, does not include explicit language to the contrary, it is not to be applied retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541–42 (6th Cir. 2007) (declining to retroactively apply a newly effective Social Security Ruling in the absence of language reflecting the Administration's intent to apply it retroactively).

ability to do basic work activities. *Kalmbach v. Comm'r or Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011).

SSR 96–7p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

In the instant case, the ALJ properly followed the two-step process for analyzing Plaintiff's credibility. (R. at 24–28.) First, the ALJ identified Plaintiff's bipolar disorder and social phobia as medically determinable and severe impairments. (R. at 24.) Second, The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. at 30.)

Substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. As the ALJ noted, Plaintiff complained of disabling anxiety and panic attacks, but the only manifestation of anxiety that Dr. Hammerly observed was mild psychomotor agitation, in the form of fidgeting. Plaintiff further complained of suffering from PTSD symptoms, but the record contains no diagnosis of or treatment for PTSD. (R. at 33.) Other objective medical evidence shows that Plaintiff's psychiatric treatment appeared sparse, given the severity of her allegations. (R. at 33.) *See* 20 C.F.R. § 404.1529(c)(3)(v) ("Factors relevant to your symptoms, such as pain, which we will consider include . . .[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms."). Moreover, in considering Plaintiff's daily activities, the ALJ determined that Plaintiff's "limitations of activities of daily living due to mental impairment are considered mild." (R. at 26); *see Hensley*, 2017 WL

1055152, at *5.  The record supports the ALJ's finding in this regard.  For instance, Plaintiff reported she was able to drive, shop in stores, prepare meals, manage her personal hygiene with reminders from her husband, that Plaintiff traveled to her son's college uses a computer for research and email, goes to the movies, goes out to eat with her family, and maintains a good relationship with her husband and other members of her family.  (R. 26–27, 32.)  Because the ALJ made a reasoned and reasonable decision supported by substantial evidence in evaluating Plaintiff's subjective complaints, the ALJ's assessment of credibility is entitled to "great weight and deference."  *Infantado*, 263 F. App'x at 475.  Accordingly, the Undersigned finds that the ALJ offered good reasons for finding the Plaintiff not entirely credible and that substantial evidence supports those reasons.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 3, 2017                              */s/ Elizabeth A. Preston Deavers*
                                                 ELIZABETH A. PRESTON DEAVERS
                                                 UNITED STATES MAGISTRATE JUDGE